Constance McLAUGHLIN, Individually and as Agent on Behalf of all of the Residents of Claverach Park, (Plaintiff) Appellant,

v.

Sally NEIGER, John Morfit and Sally Morfit, His Wife; S. B. Westlake, Bronson S. Barrows, and S. C. Tracy, Claverach Park Agents, (Defendants) Respondents.

No. 29415.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1956.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 17, 1956.

Israel Treiman, and Paul B. Rava, St. Louis, for appellant.

Raymond F. McNally, Jr., St. Louis, for Sally Neiger, John Morfit and Sally Morfit, respondents.

Barksdale & Abbott, Robert D. Abbott, and Victor A. Wallace, St. Louis, for S. B. Westlake, Bronson S. Barrows, and S. C. Tracy, Claverach Park Agents, respondents.

MATTHES, Judge.

In this action for an injunction and other relief plaintiff appeals from the judgment of the trial court dismissing her petition with prejudice and finding against her.

In substance, plaintiff's petition alleged: She has been the owner in fee simple of Lot 4 in Block 1 of Moorlands Park (now known as Claverach Park), St. Louis County, Missouri, fronting on Wydown Boulevard, since January 3, 1952. Defendants John Morfit and Sally, his wife, are the owners of a lot in Claverach Park known as 7112 Wydown Boulevard, and defendant Neiger occupies those premises. One David Hooton was the owner of the tract of land now known as Claverach Park, and caused the land to be subdivided and platted into blocks and lots as shown by plat recorded in the St. Louis County Recorder's office. On June 1, 1921, David Hooton executed an indenture, recorded June 13, 1921, whereby the lots in the subdivision were restricted to residential purposes, the restrictions expressly forbidding the operation of any business on the tract making up the subdivision. On February 23, 1934, and for the purpose of carrying out the objects of the indenture of June 1, 1921, an instrument providing for "Restrictions, Conditions, Covenants, Reservations, Rules and Regulations for Administration and Government of Claverach Park by the Agents thereof was made and entered into by the owners of the land known as Claverach Park".

The petition sets out verbatim four of the articles in the indenture of February 23, 1934. Article I provides, inter alia, that the restrictions, conditions, and covenants shall constitute a binding contract between all the lot owners of Claverach Park, "their

heirs, executors, administrators, assignees, grantees, alienees, devisees, and the occupants, lessees, tenants, and all persons controlling or claiming any interest of any character in said lots * * * and shall constitute covenants attached to and running with the land, for the purpose of binding all the aforesaid while their respective interests continue, * * *".

Article X (6) provides in part: "No building shall be designated to be, nor shall it ever be used or occupied for any business purpose, or for any purpose except that of a private residence intended to be, and which shall be, occupied by one family only. No business shall be carried on, * * *."

Additional averments in the petition are that the uniform restrictions were designed to preserve the properties permanently as a first-class neighborhood and to prevent the use of the land for any business purpose; that the defendant Neiger, with consent of defendants Morfits, maintains and operates on the premises at 7112 Wydown Boulevard, a nursery school for profit which is a business and in direct violation of the restrictions forbidding any business on the premises; that upon acquiring knowledge of the operation of said school in August, 1952, plaintiff demanded that the defendants S. B. Westlake, Bronson S. Barrows, and S. C. Tracy, as agents of Claverach Park, bring an end to the violation of the restrictions, but the agents not only failed to do so, but notified plaintiff they did not intend to enforce the restrictions.

Defendants Neiger and Morfits (hereinafter called defendants) attacked plaintiff's right to maintain the action by their joint motion to dismiss upon the ground that plaintiff's cause of action was barred by the 5-year statute of limitations, Sec. 516.120 (all statutory references are to RSMo 1949, V.A.M.S.), and upon the additional ground that plaintiff does not have legal capacity to bring the action. The remaining defendants, Westlake, Barrows, and Tracy (hereinafter for convenience called agents) filed their separate joint motion to dismiss upon the sole ground of

legal incapacity on the part of plaintiff to sue and maintain the action. In time both motions to dismiss were sustained, and, as stated, the court ordered plaintiff's petition dismissed with prejudice and rendered judgment against her.

Plaintiff appealed to the Supreme Court. Upon motion of all of the defendants that court, without opinion, ordered the cause transferred to this court.

In support of the defendants' motion to dismiss on the ground that plaintiff's cause of action is barred by the statute of limitations, two affidavits were filed from which it appears that defendant Neiger has been operating a nursery school in a fenced-off part of the rear yard of the property at 7112 Wydown Boulevard continuously and without interruption since September, 1946. Plaintiff countered with an affidavit by her executed in which she stated the nursery school "has not been and is not operated openly, continuously and without interruption, * * *". For the purpose of this opinion only we consider the school as having been in operation since September, 1946.

At the outset and for her first point plaintiff contends that the defense of the statute of limitations cannot be raised by motion to dismiss for the reason that the petition fails to disclose facts pertinent to this issue, i. e., the petition does not show upon its face the date of the commencement of the operation of the business claimed to be prohibited by the restrictions. Inasmuch as we have concluded that the 5-year statute of limitations relied upon by defendants is not controlling we deem it unnecessary to dispose of the point raised by plaintiff involving the procedural question. However, those interested in the right to raise such a matter by motion may consult Hamilton v. Linn, 355 Mo. 1178, 200 S.W.2d 69; Metcalf v. American Surety Co. of New York, 360 Mo. 1043, 232 S.W.2d 526; Meisel v. Mueller, Mo.App., 261 S.W.2d 526; Halloran v. Hackmann, Mo.Sup., 160 S.W.2d 769, loc. cit. 771, and Sec. 509.290.

The basic and meritorious question we must consider is whether the facts bring plaintiff's action within Section 516.120, the 5-year statute of limitations, or Sections 516.010 or 516.110, both being 10-year statutes of limitations.

By recognized authority including our courts a restrictive covenant of the character of the one with which we are concerned runs with the land. Thompson on Real Property (Perm.Ed.), Vol. 7, Sec. 3620, pp. 107 and 108, deals with the question in this language: "A restrictive covenant runs with the land if created for the benefit of the land conveyed, or that of which the grantor remains the owner, and intended to be annexed to such land. In such case it would become an easement appurtenant thereto, and would pass to a grantee. * * * In order that a restrictive covenant may run with the land, its performance or nonperformance must affect the nature, quality, or value of the property demised independent of collateral circumstances, or it must affect the mode of enjoyment, and there must be privity between the contracting parties. All covenants which relate to land and are for its benefit run with it, and may be enforced by each successive assignee into whose hands it may run by conveyance or assignment." See, also, Cook v. Tide Water Associated Oil Co., Mo.App., 281 S.W.2d 415, loc. cit. 418, wherein numerous cases and authorities are cited which unequivocally hold that a restrictive covenant similar to the one presented by the petition in this case runs with the land. While a restrictive covenant running with the land does so without a declaration to that effect, 26 C.J.S., Deeds, § 167, p. 544, note 53, the instant agreement of the parties expressly provides the provisions are binding upon the heirs, etc., of all lot owners, "and shall constitute covenants attached to and running with the land".

A covenant imposing valid restrictions upon lots within a given area creates an easement appurtenant thereto, and the owner of each lot has an easement in each and all of the lots affected by the restrictions. State ex rel. Britton v. Mulloy, 332 Mo. 1107, 61 S.W.2d 741, loc. cit. 743; Matthews v. First Christian Church of St. Louis, 355 Mo. 627, 197 S.W.2d 617; Peters v. Buckner, 288 Mo. 618, 232 S.W. 1024, loc. cit. 1027, 17 A.L.R. 543; King v. St. Louis Union Trust Co., 226 Mo. 351, 126 S.W. 415; Thompson on Real Property (Perm.Ed.), Vol. 7, Sec. 3631, p. 121. And it is a property right. Strauss v. J. C. Nichols Land Co., 327 Mo. 205, 37 S.W.2d 505, loc. cit. 508; Cook v. Tide Water Associated Oil Co., supra, 281 S.W. 2d 415, loc. cit. 418. Such a covenant has been classified as a negative easement, "one the effect of which is not to authorize the doing of an act by the person entitled to the easement, but merely to preclude the owner of the land subject to the easement from the doing of an act which, if no easement existed, he would be entitled to do". Wilson v. Owen, Mo.Sup., 261 S.W. 2d 19, loc. cit. 24; Restatement of the Law, Property, Div. V, Sec. 452, p. 29.

Does the easement appurtenant to plaintiff's lot constitute a hereditament so as to bring the action within Section 516.010 which bars actions for the recovery of lands, tenements and hereditaments unless instituted within ten years? Thompson on Real Property (Perm.Ed.), Vol. 1, Sec. 250, p. 412, states: "The term 'hereditament' comprehends anything which may be inherited, whether corporeal or incorporeal, and includes both lands and tenements. * * * In other words, incorporeal real property is a right issuing out of or annexed to a thing corporeal, and consists of the right to have some part only of the produce or benefit of the corporeal property, or to exercise a right or have an easement or privilege or advantage over or out of it." See, also, Tiffany, Real Property (3rd Ed.), Vol. 1, Sec. 10, p. 13; 73 C.J.S., Property, § 7(c), p. 168; 42 Am.Jur., Property, Sec. 17, p. 199. In Boyce v. Missouri Pac. R. Co., 168 Mo. 583, loc. cit. 590, 68 S.W. 920, 58 L.R.A. 442, the statement is made that easements are incorporeal hereditaments. In the introduction to 3rd Ed.1931, Gill, in his work on Missouri Titles, p. 55, classifies

an easement as an incorporeal hereditament. Speaking with reference to a right of way the Supreme Court of Illinois, in Fallon v. Illinois Commerce Commission, 402 Ill. 516, 84 N.E.2d 641, loc. cit. 644, said: "It is elementary that a right of way is one kind of an easement, and is also an incorporeal hereditament. 2 Blackstone, 35; * * *."

In Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, 125 S.W. 486, relied upon by defendants, the court was concerned with a leasehold for a term of twenty years, and the precise question for determination was whether such a leasehold constituted personal property. After an exhaustive discourse on opinions from foreign jurisdictions, the court concluded that the leasehold constituted personalty, and upon the death of the owner thereof passed to his legal representative. It is significant to note that the court quoted from the case of Mayor, etc., of City of New York v. Mabie, 3 Kern. 151, 13 N.Y. 151, as follows: "'Now, a term for years in lands (and a fortiori in incorporeal rights) is not in law a tenement or a hereditament. * * *. The first of these definitions requires that the estate or interest, to amount to a tenement, should be a freehold at least; and to be termed a hereditament, according to the second, *it must be descendible by inheritance.*'" 225 Mo. loc. cit. 445, 125 S.W. loc. cit. 496. (Emphasis ours).

■ The instant easement possesses the elements necessary to bring it within the classification of a hereditament. It is a right growing out of or appurtenant to real property. And that the easement would pass by inheritance with the lot to which it is appurtenant can hardly be questioned. We therefore conclude that, inasmuch as the easement is a hereditament, and the effect of the relief plaintiff is seeking would be to restore to her the easement in the lot owned by defendants Morfits and occupied by defendant Neiger free of the alleged prohibited business with which the easement is now burdened, the action is controlled by Section 516.010.

We have also concluded that the trial court improperly dismissed plaintiff's cause of action on the ground that she does not have legal capacity to sue.

■ Section 509.290 is authority for the use of a motion to dismiss for the purpose of objecting to plaintiff's legal capacity to sue whether or not the objection appears from the pleadings and other papers filed in the cause. When the matter raised by motion to dismiss is not apparent from the petition, the motion performs the office of a "speaking demurrer". This practice came into existence with the adoption of the Civil Code of Missouri, Laws of Mo.1943, p. 353 et seq. Metcalf v. American Surety Co. of New York, supra, 232 S.W.2d 526, loc. cit. 530. And the courts have recognized this procedural improvement is an aid to prompt and efficient administration of justice, making it possible to decide at the outset of litigation an issue that would dispose of an action groundless on the *uncontroverted facts.* Metcalf v. American Surety Co. of New York, supra, 232 S.W.2d loc. cit. 530; Hamilton v. Linn, supra, 355 Mo. 1178, 200 S.W.2d 69, loc. cit. 71; Halloran v. Hackmann, supra, Mo.Sup., 160 S.W.2d 769, loc. cit. 771.

But the instant case does not come within the purview of Section 509.290 and the principle as enunciated in the cited cases. Here we have a situation where a real controversy in regard to a vital issue was raised by the motions to dismiss and the documentary proof. In her petition plaintiff unequivocally alleged she is the fee simple owner of a lot in Claverach Park subdivision. This was challenged by defendants and agents (such was the effect of asserting that plaintiff did not have legal capacity to sue). Plaintiff countered with affidavits and other documents. In this state of the record the court decided the issue basic to the right to maintain the action and dismissed plaintiff's petition with prejudice. In doing so the court indicated by a memorandum opinion that plaintiff " * * * has not proved that she is the legal owner, * * *.", and

385

apparently relied upon Buckhorn v. Greenwood, Mo.Sup., 208 S.W. 59, which we observe was an action to quiet title and in ejectment wherein the issues were joined by answer and duly tried.

We deem it unnecessary to detail the supporting proof by plaintiff on the title question. Suffice to say, that if such proof was insufficient to establish plaintiff was the record owner of the lot for the purpose of maintaining the action, which we do not decide, it was adequate to show that the issue raised by defendants and agents could not be decided on uncontroverted facts.

While the use of a motion to dismiss making it possible to determine an issue that will dispose of an action groundless on *uncontroverted facts* is contemplated by Section 509.290, justice should not be thwarted or sacrificed merely for the purpose of gaining an early termination of a lawsuit. When the record demonstrates clearly and forcibly, as is true in the instant case, that the issue or question relied upon and raised by the motion cannot be decided on uncontroverted facts, the parties should not be foreclosed from submitting that issue to the court or jury in the trial of the cause.

We must therefore hold that the trial court erred in attempting to adjudicate the issue of plaintiff's capacity to sue on the motions to dismiss.

A motion to dismiss plaintiff's appeal was filed in this court on the ground that 42 V.A.M.S. Rule 1.08 was violated in several respects. We have considered the motion and while full and literal compliance with the rule may have been disregarded, we do not consider the violation thereof in the respects pointed out in the motion sufficient to justify dismissing the appeal, and therefore overrule the motion to dismiss.

The cause is reversed and remanded.

ANDERSON, P. J., and RUDDY, J., concur.