MID–STATES PAINT & CHEMICAL CO., Plaintiff–Respondent,

v.

Dwight A. HERR, Defendant–Appellant.

No. 53279.

Missouri Court of Appeals, Eastern District, Division Two.

March 1, 1988.

Stefan J. Glynias, Thomas K. Lammert, Jr., St. Louis, for defendant-appellant.

William Mark Rasmussen, Clayton, for plaintiff-respondent.

DOWD, Judge.

Former employee appeals from the judgment of the trial court enjoining appellant from accepting employment in the industrial coatings industry or for a competitive employer within a radius of 125 miles of Crestwood, Missouri or from soliciting existing or potential customers of respondent employer within that 125 mile radius, for two years from the date of termination. We affirm.

Appellant is a former salesman of Mid–States Paint & Chemical Company (hereinafter respondent). Respondent develops, manufactures and sells industrial coatings. The industrial coatings industry is a highly competitive and technical field that involves

the painting of manufacturers' products before they are sold. The industrial paints are specially designed for the individual needs of the manufacturers. Sales in the industrial coatings industry requires the technical understanding of the particular product of the manufacturer and the manufacturer's method of application.

At the time appellant was hired in July 1985, he had no prior experience in the coatings industry or in outside sales. Appellant's employment as a salesman involved extensive customer contact and access to sensitive business information regarding respondent's operations. In the course of his employment appellant had access to confidential information including customer lists, formula books, pricing information, and information regarding the method of application utilized by respondent's customers.

As a condition of employment, appellant voluntarily signed a noncompete agreement in which he agreed not to accept employment in the coatings industry or from a competitive employer within a radius of 350 miles from respondent's headquarters in Crestwood, Missouri and would not accept work for any competitive employer selling within this area, for a period of three years from the date of termination. Appellant acknowledged he understood the contents and requirements of the agreement.

Respondent has approximately 1400 customers from coast-to-coast, with the majority of them being located within a 125 mile radius of St. Louis. Appellant had responsibility for approximately 250 of respondent's customers. All of appellant's customers were located within the State of Missouri.

In January 1987, appellant accepted employment with Jordan Paint Manufacturing Company, a direct competitor of respondent. Jordan Paint is a national company that was seeking to expand into a new territory that covered Missouri and Illinois. Appellant was hired as an outside salesman to develop into the new territorial manager.

In February 1987, after notifying respondent of his intention to terminate, appellant signed a letter of resignation in which he represented to respondent that he would honor the covenant not to compete. Appellant admitted he knew the representation he was making was false and did so to induce respondent to award appellant a $1,500.00 discretionary bonus. Respondent relied on appellant's representation that he would honor the agreement and awarded the bonus.

On February 16, 1987, appellant commenced working for Jordan Paint. Appellant immediately began soliciting respondent's customers and on occasion made derogatory remarks about respondent's quality control.

Respondent brought suit seeking a temporary restraining order and a permanent injunction to enforce the covenant not to compete. On April 17, 1987, the trial court entered a temporary restraining order prohibiting appellant from competing within 350 miles of respondent's headquarters. On May 18, 1987, the trial court entered judgment in favor of respondent and granted permanent injunctive relief. The court determined the three year, 350 mile restrictions were not more restrictive than reasonably necessary and thus that the noncompete agreement was reasonable as written. The court, however, chose to exercise its equitable powers and limited the restrictions to two years in duration and a 125 mile radius.

Our standard of review in this court tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and accordingly we sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. The trial court, in its findings on the evidence, is given due regard for having the opportunity to judge the credibility of the witnesses. Rule 73.01(c)(2).

In his first point appellant contends the trial court erred in granting a permanent injunction in that the trial court exceeded its authority by modifying both the geographical and time restrictions of the covenant. This, appellant contends, was contrary to fundamental contract law and was

tantamount to making a contract for the parties.

"The ordinary rules of contractual construction and enforcement are not necessarily applicable to non-compete agreements." *Continental Research Corp. v. Scholz*, 595 S.W.2d 396, 399 (Mo.App.1980). This court in prior cases has itself limited and affirmed modifications by the trial court of covenants not to compete where the restrictions were broader than necessary. *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299 (Mo.App.1980); *R.E. Harrington, Inc. v. Frick*, 428 S.W.2d 945 (Mo.App.1968); *see also, Sigma Chemical Co. v. Harris*, 794 F.2d 371 (8th Cir.1986) (modification of noncompetition covenant and nondisclosure agreement). Moreover, in this case the court specifically found the covenant's restrictions were reasonable but chose to exercise its equitable powers to modify the extent of the restrictions. The issuance and terms of an injunction rest "largely in the sound discretion of the trial court, which is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances, and equities of the case before it." *May Dept. Stores Co. v. County of St. Louis*, 607 S.W.2d 857, 870 (Mo.App.1980).

Appellant contends Missouri courts have refused to follow the "blue pencil" doctrine and thus the court had no authority to modify the covenant not to compete. Appellant is correct that we do not follow the "blue pencil" doctrine but appellant misconstrues the meaning of that doctrine. Under the blue pencil doctrine, if a restrictive covenant contains words which are unreasonable limitations and if stricken would leave a reasonable contract the court may "blue pencil" or strike those words out, while if the contract contains no specifically expressed time or geographical limitations the court may not write into the contract any such limitations but must declare the entire provision void. *R.E. Harrington, Inc., supra*, at 951; Annot. 61 A.L.R. 3d 397, 416 (1975).

■ In *R.E. Harrington, Inc., supra*, this court rejected the blue pencil rule in construing a nonspecific geographical limi-

tation of a covenant not to compete to encompass a limited three state area. In so doing the court noted:

"[T]he courts of this state, and the better reasoned authorities in other states have never allowed the usages and meaning of equity to be drowned in a murky pool of meaningless form, but have decreed enforcement as against a defendant whose breach occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement imposed a larger and unreasonable restraint. . . .

. . . It is true that our courts have always refused to enforce totally unreasonable contracts, but they have done so for the reasons of equity and common sense, and not because of some archaic rule of draftmanship."

*Id.* at 951. Thus, this court recognized that an unreasonable restriction against competition in a contract may be modified and enforced to the extent that it is reasonable, regardless of the covenant's form of wording.

More recently, in *Orchard Container Corp., supra*, this court modified the territorial restriction and affirmed the enforcement of a covenant not to compete. The geographical restriction was modified from 200 miles to a 125 mile radius. *Orchard* has since been cited favorably by our Supreme Court in *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 n. 2 (Mo. banc 1985).

Likewise, in *Sigma Chemical Co. v. Harris, supra*, the Eighth Circuit Court of Appeals, applying Missouri law, modified the geographical and time restrictions of a covenant not to compete and nondisclosure agreement. The nondisclosure agreement was unlimited as to time and the covenant not to compete failed to contain a geographic restriction. *Id.* at 374–75.

We conclude the trial court did not exceed its equitable authority by modifying the restrictions of the covenant not to compete. Point denied.

■ In his next three points appellant contends the geographic scope and time restrictions of the covenant as written are

unreasonable and that the court thus erred in granting the temporary restraining order and the permanent injunction.

In its judgment, the court modified the time restriction of the covenant from three years to two years, limited the geographic scope of the covenant from a 350 mile radius to a 125 mile radius of Crestwood, Missouri, and construed the phrase "and will not seek or accept work for any competitive employer selling within this area" to allow appellant to work in the coatings industry provided that appellant perform his work outside the 125 mile radius and not directly or indirectly contact any existing or potential customers of respondent located within that 125 mile radius.

Appellant is in no position to complain that the covenant not to compete is more restrictive than the court's judgment. *A.B. Chance Co. v. Schmidt,* 719 S.W.2d 854, 859 (Mo.App.1986). While from our review of the record we agree with the trial court that the terms of the covenant as written are reasonable, the proper issue before us should be whether the restrictions imposed by the injunction are no more restrictive than necessary to protect the employer from unfair competition by the employee.

The evidence was the industrial coatings industry is a highly competitive and technical field. Appellant was hired with no experience and was given access to confidential business information. Considering the sensitive business information which appellant was provided, we do not find the three year durational limitation, or more importantly the two year restriction imposed by the trial court, to be unreasonable. *See, House of Tools & Engineering, Inc. v. Price,* 504 S.W.2d 157, 159 (Mo.App.1973) (Covenant not to compete containing three year durational limitation reasonable where employee salesman was given extensive information on each of employer's customers).

As to the geographic limitation, "[t]he question of the reasonableness of the geographic limits sought to be imposed depends upon whether the employer possessed a stock of customers located co-extensively with those geographic limits."

*Orchard Container Corp. supra,* at 303. The evidence was the employer possessed customers nationwide and co-extensive with the 350 mile geographical limit of the covenant. Moreover, the majority of respondent employer's customers are located within the 125 mile restriction imposed by the trial court.

Appellant had responsibility for approximately 250 of respondent's customers located within a 100 mile radius of respondent's headquarters. In addition, appellant had access to respondent's customer lists, customer cards containing the products purchased by the customers, and the employer's formula books.

The trial court's finding that the 350 mile geographic restriction, prohibiting appellant from accepting employment with an employer selling within this area or from soliciting customers within the territory, was reasonable cannot be said to be without evidence to support it or against the weight of the evidence. More importantly, the geographic limitation imposed by the trial court prohibiting appellant from working in the industrial coatings industry within a 125 mile radius of the employer's headquarters or from soliciting any customers within that radius is clearly reasonable. Points two, three, and four are denied.

In his fifth point appellant contends the trial court erred in granting the temporary restraining order and permanent injunction because respondent employer did not have a legitimate protectable interest to support the enforcement of the covenant not to compete. Appellant contends the trial court's finding that plaintiff possessed protectable trade secrets and customer contacts is against the weight of the evidence.

Appellant's contention is without merit. The purpose of a restrictive covenant is to protect the employer from unfair competition by a former employee. The employer has protectable interests in trade secrets and customer contacts. *Continental Research Corp., supra,* at 400.

We follow the Restatement of Torts § 757 (1939) definition of "trade secrets," *Continental Research Corp., supra,* at

**618**

400–01, which defines a trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Restatement, *supra*, comment b. Trade secrets may include "a list of customers" and "a code for determining discounts, rebates or other concessions in a price list or catalogue." *Id.* The subject matter of a trade secret, however, may not be of general knowledge but must be secret. *Id.*

Without discussing the issue of customer contacts, we conclude the evidence clearly supported the finding that respondent employer had a protectable interest in trade secrets to support enforcement of the covenant. Appellant admitted he had access to the formula books and that the formulas were secret. The evidence was that not even the customers were given the complete formulas for the products sold.

Appellant further admitted that he had access to the customer lists, pricing information, and customer cards containing the product purchased by each customer. Appellant acknowledged it would be advantageous to have knowledge of the information contained in the customer cards. Enforcement of the covenant was supported by the evidence. Point denied.

■ In his final point appellant contends the court erred in granting the permanent injunction under general equitable principles. A balancing of the hardships, appellant contends, demonstrates that he poses no threat to respondent that is not already presented by respondent's competitors, while enforcement of the covenant denies appellant a career.

Appellant voluntarily accepted employment under the terms of the covenant and courts should only relieve the covenantor of his voluntary obligation for a "substantial reason." *Osage Glass, Inc., supra,* at 75. We find no substantial reason to exist here, especially in light of the fact appellant immediately began contacting respondent's customers and purposely misrepresented to respondent that he would honor

the agreement so as to obtain a discretionary bonus. Point denied.

The judgment is affirmed.

STEPHAN, P.J., and PUDLOWSKI, J., concur.